Raymond W. STEPHENS, Plaintiff,

v.

**U.S. DEPARTMENT OF LABOR, Defendant.**

**Civil Action No. 07–00858 (HHK).**

United States District Court, District of Columbia.

Sept. 11, 2008.

Raymond W. Stephens, Sarasota, FL, pro se.

Claire M. Whitaker, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HENRY H. KENNEDY, JR., District Judge.

Raymond Stephens ("Stephens") brings this action against the United States Department of Labor ("DOL"), asserting that the DOL's administrative decision to deny Stephens benefits under Part E of the Energy Employees Occupational Illness Compensation Program Act of 2000, 42 U.S.C. §§ 7384 *et seq.*, ("EEOICPA") was arbitrary and capricious. Before the court are the parties' cross-motions for summary judgment [## 19, 21, 30]. Upon consideration of the motions, the oppositions thereto, and the record of the case, the court

has concluded that Stephens' motions must be denied and the Department of Labor's motion must be granted.

## I. BACKGROUND

The EEOICPA provides benefits to individuals with illnesses caused by exposure to radiation and other toxic substances during the course of their work for the United States Department of Energy ("DOE") and some of DOE's contractors and subcontractors. The EEOICPA compensation program is administered by the DOL. Part B of the EEOICPA provides compensation to workers who were employed by a DOE contractor or subcontractor at a DOE facility, an atomic weapons employer at an atomic weapons facility, or a beryllium vendor at a beryllium vendor facility. 42 U.S.C. § 7384n. Part E of the EEOICPA provides compensation to employees of DOE contractors only if they developed an illness due to exposure at a "DOE facility." 42 U.S.C. § 7385s.

Stephens is a former employee of the Loral American Beryllium Company ("Loral American"), which manufactures beryllium products. Stephens contends that he developed chronic beryllium disease, as well as heart and lung problems, due to his employment at Loral American. He filed a claim under Part B of the EEOICPA, as well as a claim under Part E.

The DOL approved Stephens' Part B claim and awarded him $150,000 for chronic beryllium disease. The DOL denied Stephens' Part E claim on the grounds that Part E benefits are available only if the claimant developed an illness at a "DOE facility," and Loral American does not meet EEOICPA's definition of a DOE facility. Section 7384l(12) of the EEOICPA defines a "DOE facility" as:

> [A]ny building, structure, or premise, including the grounds upon which such building, structure, or premise is located—
>
> (A) in which operations are, or have been, conducted by, or on behalf of, the Department of Energy (except for buildings, structures, premises, grounds, or operations covered by Executive Order 12344, dated February 1, 1982 (42 U.S.C. 7158 note), pertaining to the Naval Nuclear Propulsion Program), and
>
> (B) with regard to which the Department of Energy has or had—
>
> (i) a proprietary interest; or
>
> (ii) entered into a contract with an entity to provide management and operation, management and integration, environmental remediation services, construction, or maintenance services.

42 U.S.C. § 7384l(12). DOL found that Loral American satisfied subpart A of § 7384l(12) because there was no question that Loral American was a "building, structure, or premise" in which operations were conducted on behalf of DOE. DOL found that Loral American did not satisfy subpart B of § 7384l(12), however, because DOE had neither: (1) a proprietary interest in Loral American nor (2) a contract with an entity to manage, operate, or provide other relevant services, on Loral American's premises.

Stephens submitted requests for reconsideration asserting that Loral American qualifies as a "DOE facility" because DOE had a proprietary interest in Loral American.[1] Loral American manufactured be-

---

1. In the administrative proceedings below, Stephens raised numerous other arguments as to why Loral American qualified as a DOE facility and why he was entitled to benefits under Part E. This memorandum opinion provides background only as to those arguments relevant to those that Stephens raises before this court.

ryllium products for Rocky Flats,[2] which is a DOE contractor. Rocky Flats instructed Loral American to lease and install a piece of machinery known as a Zeiss UPMC 805/1200 Measuring System ("Zeiss Machine"). This machine was apparently used to inspect and/or clean parts that Loral American manufactured for Rocky Flats. Via letter, Rocky Flats informed Loral American that Rocky Flats would "assume the lease responsibility which in turn the system becomes Government-furnished equipment." AR 676.[3] Stephens argued that this letter demonstrated that DOE owned the Zeiss Machine while the machine was installed at Loral American and, by virtue of this ownership, DOE had a proprietary interest in Loral American.

In addition, to properly install the Zeiss machine, Loral American made substantial modifications to parts of its facility, such as installing a concrete floor and a cleaning system. Stephens contended that because Rocky Flats required Loral American to make these modifications—and paid for some of these modifications—DOE assumed a proprietary interest in Loral American.

DOL disagreed, finding that Rocky Flat's ownership of the Zeiss Machine was irrelevant because, for purposes of EEOICPA, DOE must have a proprietary interest in a building or facility, not in equipment. DOL additionally found that DOE did not have a proprietary interest in the modifications to Loral American's facilities because Loral American, and not DOE, owned the modified facilities.

Stephens also asserted that DOE contracted with various entities regarding Loral American, and these contracts rendered Loral American a "DOE facility" pursuant to subpart B(ii) of § 7384l(12). This section provides, *inter alia*, that if DOE has "entered into a contract with an entity to provide management and operation, [and] management and integration," with respect to any "building, structure, or premise," then that "building, structure, or premise" may be considered to be a DOE facility. 42 U.S.C. § 7384l(12). DOL reviewed the contracts in its files and concluded that DOE's contracts with respect to Loral American did not fit any of the categories of contracts listed in § 7384l(12)(B)(ii). DOL found that the Loral American contracts in DOL's file mostly involved procurement, and § 7384l(12)(B)(ii) does not extend to procurement contracts.

## II. ANALYSIS

■ Stephens and DOL cross-move for summary judgment. Stephens asserts that he is entitled to benefits under Part E and asserts that DOL acted arbitrarily and capriciously by denying him benefits because: (1) DOE had a proprietary interest in Loral American because DOE owned the Zeiss machine that was housed at Loral American; (2) DOE had a proprietary interest in Loral American because Loral American was required to make substantial alterations to its building to facilitate the installation of the Zeiss machine; and (3) DOE's contracts with respect to Loral American qualify as management, integration and/or operations contracts.[4]

---

**2.** Rocky Flats is apparently owned or managed by Rockwell Flats. For ease of reference, this court uses "Rocky Flats" and "Rockwell Flats" interchangeably.

**3.** The Zeiss Machine has since been removed from Loral American.

**4.** Stephens raises three other arguments as to why the DOL's determination was arbitrary and capricious. These other arguments are: (1) DOE's interpretation of the term "proprietary interest" is too narrow; (2) DOE has a proprietary interest in Loral American because DOE funded the construction of a por-

DOL cross-moves for summary judgment asserting that DOL's decision was neither arbitrary nor capricious. DOL contends that it correctly determined that Stephens was not entitled to benefits because Loral American did not qualify as a DOE facility under Part E of the EEOIC-PA. DOL's position is well-taken.

## A. Standard of Review

■ When a plaintiff challenges an agency's administrative decision, the court applies the standard of review set forth under the relevant statute or, if no standard is specified, the court applies the standard of review set forth in the Administrative Procedures Act. *See Weingartner v. Wynne,* 2007 WL 950083, at *2 n. 2 (D.D.C. March 28, 2007) (slip copy). Here, Stephens challenges the DOL's denial of benefits under Part E of the EEOIPCA. Section 7385s–6 of the EEOICPA provides that the court can "modify or set aside [the DOL's] decision only if the court determines that such decision was arbitrary and capricious."

■ Because of the similarity between this standard of review and the standard of review set forth in the Administrative Procedures Act ("APA"), case law interpreting the APA's standard of review provides useful guidance. Under the APA, a reviewing court shall set aside agency action it finds to be, *inter alia,* "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). An agency action is arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). While the court's scope of review is narrow, as it "is not empowered to substitute its judgment for that of the agency," the court must still conduct "a thorough, probing, in-depth review" of the agency's decision. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[5]

■ Agency actions are presumed to be valid. *See Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.1976). As long as an agency considers relevant factors and can articulate a rational connection between

tion of a Loral American facility known as Tallevast; and (3) Stephens received benefits under Part B, and EEOICPA provides that employees who receive benefits under Part B are eligible for benefits under Part E. Stephens did not raise these arguments during the administrative proceedings below and raises these arguments for the first time before this court. Arguments that are not raised before an administrative agency cannot be raised, for the first time, to the reviewing court. *See, e.g. United Transp. Union v. Surface Transp. Bd.,* 114 F.3d 1242, 1244–45 (D.C.Cir.1997). It bears mentioning that, even if he had raised the argument below, Stephens' assertion that he is eligible for benefits under Part E because he is eligible under Part B is without merit for the reasons stated

on page 5 of DOL's brief docketed on May 13, 2008[# 28].

5. The DOL argues that this court's review should be more deferential than that set forth in the APA because the EEOICPA provides that agency actions should be set aside if the agency's action is "arbitrary *and* capricious." 42 U.S.C. § 7385s–6(a) (emphasis added). In contrast, the APA provides that agency actions should be set aside if the agency's action is "arbitrary *[or]* capricious." This court need not decide this issue. Even assuming that the APA's standard of review is more rigorous than the EEOICPA's standard of review, for the reasons set forth in the text *infra,* the DOL's administrative decision passes muster under the APA's standard of review.

the facts found and the choices made, then its decision will be upheld. *See State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. When a final agency action is challenged, the court's review is limited to the administrative record and the grounds for decision invoked by the agency. *See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record, even though the Court does not employ the standard of review set forth in Rule 56, Fed.R.Civ.P." *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C.1995) (internal citation omitted); *see also* LCvR 7(2).

## B. Proprietary Interest in the Zeiss Machine

■ Stephens contends that Loral American qualifies as a "DOE facility" because DOE owned the Zeiss machine while it was installed at Loral American.[6] DOL rejoins that, while DOE may have owned the machine, proprietary interest in equipment is not enough. DOL asserts that to qualify as a "DOE facility," DOE must have had a proprietary interest in Loral American's actual building, structure, or premises. While not explicit from the administrative record, it is clear that DOL

interpreted the term "proprietary interest" to mean ownership. AR 2001. ("It is our understanding that Loral American owned the concrete floor ...").[7]

DOL's argument is well-taken. The EEOICPA states that a facility is a "DOE facility" if DOE has a "proprietary interest" in a "building, structure, or premise, including the grounds upon which such building, structure, or premise is located." 42 U.S.C. § 7384l(12). This definition excludes a reading whereby a proprietary interest in equipment installed on the grounds of a facility renders that facility a "DOE facility."[8]

## C. Modifications Related to the Zeiss Machine

■ To properly install the Zeiss machine, Loral American made significant modifications to its building. For example, it installed a concrete base, special insulation, as well as a special cleaning system. Stephens contends that because Rocky Flats required Loral American to make these modifications, and because Rocky Flats paid for some of these modifications, DOE assumed a proprietary interest in these modifications. Stephens asserts that he made this argument in the administrative proceedings, but that the DOE arbitrarily and capriciously ignored this argument. DOL rejoins that Loral American, and not DOE owned the modifi-

---

6. Stephens appears to disclaim this argument in his motion for summary judgment. Nonetheless, in the interest of completeness, the court addresses it.

7. As noted *supra* note 4, Stephens contends on appeal that DOL's interpretation of the term "proprietary interest" is too narrow. Stephens asserts that the term "proprietary interest" should be read broadly and encompass "the general idea [of] the right to receive the benefits from the property." Pl.'s Opp'n 13. Stephens did not, however, challenge DOL's interpretation of this term below. In-

deed Stephens recognized that DOL's analysis "provide[d] the standard definition of proprietary interest under law." DOL 721. Stephens merely complained that DOL did not provide a "citation to a law or have the definition provided in this paragraph." *Id.* Arguments not raised below are waived.

8. The DOL argues that the fact that the Zeiss machine was annexed (*i.e.* attached) to Loral American's realty is not proof that DOE had a proprietary interest in Loral American. Stephens does not make this argument and accordingly, the court does not address it.

cations and thus DOE had no proprietary interest in these modifications. DOL has the better position.

There is nothing in the administrative record that shows that DOE assumed a proprietary interest in these modifications. The administrative record—in particular a July 25, 1985, letter from a senior buyer at Rocky Flats to a Loral American representative—demonstrates that DOE assumed ownership solely of the Zeiss machine and not the modifications to Loral American's facilities. This letter states that "[Rocky Flats] will assume the lease responsibility which in turn the system becomes Government-furnished equipment." AR 676. It also states that "[i]t shall be Loral's responsibility to assure the timely installation and acceptance of the Zeiss equipment." *Id.* By stating that Loral American had responsibility to "assure the timely installation" of the machine, this letter indicates that Rocky Flats assumed no responsibility for, or interest in, the necessary modifications to Loral American's building.[9]

The fact that Rocky Flats paid for at least some of these modifications does not alter this conclusion. There is nothing in the administrative record that demonstrates that DOE owned these modifications as a result of paying for them. Stephens has not come forward with any evidence that DOE owned these modifications. Stephens has the burden of "proving by a preponderance of the evidence" that DOE had a proprietary interest in Loral American. 30 C.F.R. § 30.111. Accordingly, DOL correctly found that DOE had no proprietary interest in Loral American.[10]

Stephens' contention that DOL did not address the above-arguments in the administrative proceedings is without merit. DOL issued a final decision on Stephens' claim on November 9, 2006, which does not address this argument. AR 813–14. Stephens submitted a request for reconsideration, and the administrative record shows that DOL's Branch of Policy, Regulation, and Procedures considered this argument when evaluating Stephens' request for reconsideration AR 2001 ("DEEOIC is aware that concrete flooring was installed to specifications needed as a prerequisite for installation of the Zeiss Machine . . . It is our understanding that [Loral American] owned the concrete floor and therefore there is no DOE proprietary interest

9. On November 12, 1981, Rocky Flats submitted a letter to Loral American stating that "[t]he team also agreed that certified fixturing used in lieu of inspection gaging would become the property of Rocky Flats." AR 679–80. Stephens contends that this letter shows that Rocky Flats had a proprietary interest in Loral American. To the contrary, there is no evidence that this "certified fixturing" was anything but equipment. As discussed in the text *supra*, a proprietary interest in equipment is not enough—DOE must have a proprietary interest in buildings or structures.

10. Stephens argues that a September 2006 memo from DOL's Branch of Policy, Regulation, and Procedures, which analyses Stephens' claim, improperly cites EEOICPA Bulletin 03–27 paragraph 21 for the proposition that Loral American does not qualify as a DOE facility. Stephens misreads the memo. Stephens had argued in the administrative proceedings below that Loral American qualified as a subcontractor of Rocky Flats, and that subcontractor employees are eligible for benefits under Part E. The DOL found that for purposes of Part E, the work performed by the employees of a subcontractor must be done on the premises of a DOE facility. The DOL found that because Loral American was not a DOE facility, this subcontractor relationship did not qualify for Part E coverage. The memo cites the EEOICPA Bulletin in connection with this argument. Stephens does not argue before this court that he is entitled to benefits because Loral American is a subcontractor of Rocky Flats. Accordingly, this memo has no relevance to the issues before this court.

and the DOE facility definition is not met."). Accordingly, DOL did address this argument and found it to be without merit.

## D. Management and Operation Contracts

■ Stephens contends that, even if DOE does not have a proprietary interest in Loral American, Loral American qualifies as a DOE facility pursuant to § 7384l(12)(B)(ii). This section provides, *inter alia*, that if DOE has "entered into a contract with an entity to provide management and operation, [and] management and integration," with respect to any "building, structure, or premise," then that "building, structure, or premise" may be considered to be a DOE facility. 42 U.S.C. § 7384l(12). Stephens argues that DOE contracted with at least two entities—EG & G and Rocky Flats—to set up and supervise Loral American's compliance with DOE security requirements. Stephens also asserts that, even if Loral American owned the modifications made in connection with the Zeiss machine, Loral American performed these modifications at DOE's request, and that DOE paid for these modifications. Stephens contends that there must have been a contractual relationship between DOE and Loral American and/or some other entity to ensure these modifications were completed.[11]

Stephens' arguments are without merit. Stephens is unable to point to a specific contract or document that shows that DOE contracted with EG & G and Rocky Flats with respect to security at Loral American. There are documents in the administrative record that show that EG & G and Rocky Flats engaged in some security-related activities at Loral American. For example, there is a letter from Rocky Flats that states that representatives from EG & G visited Loral American to ensure that no classified documents or materials related to an expired Rocky Flats contract were present at Loral Flats in connection with terminating Loral American as an "active, classified (off-site) subcontractor." AR 677. It is, however, too far an inferential leap to assume that simply because these entities inspected Loral American, that there was some kind of contract among DOE, Rocky Flats, and EG & G to provide these services, let alone that these services qualify as management, operational, or integration services.[12]

Similarly, while there is evidence that DOE required Loral American to modify its facility in connection with the Zeiss Machine, there is no evidence that there was a contractual obligation to do so. Stephens hypothesizes that, even though there may not be a written contract, there must have been an implied contract. *See* Pl.'s Opp'n 18 ("The bottom line is that DOE paid for, one way or another, the construction and either had a contractual relation with [Loral American] itself or somebody else to make sure it got done.").

---

11. Stephens also contends that DOE required and funded Loral American's construction of a separate facility on the grounds of Loral America. In so asserting, Stephens relies on a declaration submitted by the former president of Loral American in another court proceeding. This declaration is not part of the administrative record. This court will not consider evidence that is not in the administrative record. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419–20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

12. It may be the case that this court has overlooked relevant contracts. But the administrative record is over two thousand pages long, and Stephens, as the party seeking review of the administrative decision has the burden of supporting his case. *City of Olmsted Falls v. F.A.A.,* 292 F.3d 261, 271 (D.C.Cir.2002). Accordingly, this court will not expend its time looking for the needle of a contract in the hay of the administrative record.

In the administrative proceedings below, DOL reviewed various contracts related to Loral America, and concluded that these contracts in the record were predominantly procurement contracts. DOL found that there was no evidence that DOE contracted with any entity to provide management and operation, management and integration, environmental remediation, construction, or maintenance. This court has reviewed the administrative record and concurs with the DOL's assessment. There is no evidence in the record of contracts involving Loral American other than procurement contracts.

■ Stephens contends that DOL did not need to "find[ ] a document describing [an agreement among Loral American, Rocky Flats, or EG & G, with regard to security and/or modifications] in clear terms. All [DOL] needed was the evidence that DOE wanted things done and the fact that it did get done and the fact that it involved managing and operating some part" of Loral American. Pl.'s Opp'n 19. Stephens points out that DOE issued EEOICPA Bulletin 03–27, which defines the meaning of the term "contract," and that this definition states that a contract can take the form of an "implied agreement."

Stephens' argument is flawed for two reasons. First, the definition of a contract in EEOICPA Bulletin 03–27 has no bearing on the instant issue. Bulletin 03–27's definition of a contract relates only to whether an individual qualifies as a subcontractor employee, not to whether a contract falls within the scope of § 7384l(12)(B)(ii). Second, the administra-

tive record makes clear that DOL sought written evidence of a contract that falls within the scope of § 7384l(12)(B)(ii), as opposed to pure speculation that such a contract exists. Stephens was unable to— and is still unable to—come forward with any evidence other than speculation that such contracts exist. There was nothing arbitrary or capricious about the DOL requiring more than pure speculation that § 7384l(12)(B)(ii) was satisfied.[13]

### III. CONCLUSION

For the foregoing reasons, this court concludes that DOL's motion for summary judgment must be **GRANTED** and Stephens' motions for summary judgment must be **DENIED.** An appropriate order accompanies this memorandum opinion.

---

**13.** Stephens also asserts that Congress intended for § 7384l(12)(B)(ii) to be read broadly, and that the contracts related to security, modifications, and subcontracting at Loral American, referenced in the text *supra,* qualify as "management and operation," and "management and integration" contracts. 42

U.S.C. § 7384l(12). Because Stephens does not have sufficient evidence that these contracts exist, this court need not reach the issue of whether these contracts qualify as management and operation or management and integration contracts.